NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No. 21-521 (CCC) |
| v. | OPINION |
| ALMUQTADIR PADGETT, | |

**CECCHI**, District Judge.

      Presently before the court is defendant Almuqtadir Padgett's ("Padgett") motion for a *Franks* hearing, to suppress evidence allegedly obtained in violation of his constitutional rights, and seeking additional relief, including requests for the Court to compel the Government to produce evidence under the Government's disclosure requirements, and for leave to file additional pre-trial motions. ECF No. 22. The Government filed a brief in opposition (ECF No. 25) and Padgett replied (ECF No. 26). The Court has considered all of the submissions and exhibits before it. For the reasons set forth below, Padgett's motion is hereby denied with respect to his request for a *Franks* hearing, to suppress evidence, and for pretrial disclosure and production from the Government. Padgett's motion is granted only to the extent he seeks leave, if necessary, to file additional pre-trial motions.

## I.     BACKGROUND[1]

On September 9, 2020, at approximately 2:00 PM, Essex County Prosecutor's Office Detective Mark Thompson observed Padgett walking in the area of 21st street and 18th Avenue in Irvington, New Jersey with several other individuals. ECF No. 22 at Ex. A. Detective Thompson alerted other detectives that Padgett was wanted for questioning in connection with a homicide case. *Id.* Upon arriving to the area, detectives observed the individuals slow down and approach a white Infiniti car (the "subject vehicle") parked in front of 254 21st Street. *Id.* Detective Thompson then asked Padgett to speak with him until the Essex County Prosecutor's Office arrived, to which Padgett agreed. *Id.* Padgett denies that he consensually agreed to wait for other detectives to arrive. ECF No. 22-3 at ¶ 2.

While waiting for the Essex County Prosecutor's Office to arrive, Mr. Padgett asked another individual, Lionel Corothers, to take possession of his car keys. ECF No. 22 at Ex. A. Corothers took possession of an Infiniti car key handed to him by Padgett and left the area. *Id.* Next, the incident report alleges that detectives observed Padgett walking toward the parked subject vehicle in front of 254 21st street. *Id.* Detectives looked inside of the subject vehicle through the outside windows and "observed what appeared to be a rolled marijuana cigarette which was in plain view in the ashtray of the subject vehicle." *Id.* Padgett disputes the government's characterization of this alleged search, arguing that the vehicle had tinted windows and law enforcement utilized flashlights to view the vehicle interior. ECF No. 22-3 at ¶ 3. The incident report also states that the Detective could smell a strong odor of marijuana while standing outside

---

[1] The following factual recitation is taken from the record in this matter including the Newark Police Department's Incident Report of Padgett's interaction with law enforcement between September 9, 2020, and September 11, 2020 authored by Detective Rodny Severe (ECF No. 22, Exs. A and B at 4–10), and Padgett's certification disputing certain factual elements of said incident report. ECF No. 22-3

2

of and approaching the subject vehicle, even with the vehicles' windows and doors shut.  ECF No. 22 at Ex. A.  Padgett disputes these facts and provides an expert report that opines "to a reasonable degree of scientific certainty, that no discernible smell of marijuana could be perceived outside the automobile in question."  *Id.* at 4.  While detectives were looking inside the vehicle, "Padgett yelled that there was only some marijuana inside of the subject vehicle."  *Id.* at Ex. A.  Padgett disputes that he ever said this.  ECF No. 22-3 at ¶ 4.

When the Essex County Prosecutor's Office Homicide Task Force arrived on the scene, Padgett voluntarily left with them for questioning.  ECF No. 22 at Ex. A.  Padgett denies that he left voluntarily and alleges law enforcement removed him in handcuffs.  ECF No. 22-3 at ¶ 2.  A patrol unit was requested to the scene, and upon arrival, facilitated the towing and transport of the subject vehicle back to a secure bay in Newark.  ECF No. 22 at Ex. A.

The next day, Detective Rodny Severe met with Sheriff's Officer David Daneker from the Somerset County Sheriff's Office K9 unit.  *Id.*  Officer Daneker and the K9 conducted an olfactory sniff of the subject vehicle, which allegedly resulted in a positive indication for the presence of narcotics in the vehicle.  *Id.*

On September 11, 2020 law enforcement sought a search warrant of the subject vehicle based upon the above mentioned facts.  ECF No. 22 at Ex. B.  A search warranted was issued and executed on September 11, 2020. *Id.*  Law enforcement recovered from the subject vehicle a cellular phone (the "subject cell phone"); a black plastic bag containing heroin, crack cocaine, and methamphetamine; and a black 9mm Smith & Wesson handgun loaded with 15 rounds of ammunition.  *Id.*

## II.   PROCEDURAL HISTORY

From the facts above, Padgett was charged by Complaint on September 15, 2020 with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); one count of possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  ECF No. 1.  Padgett was arrested on September 24, 2020 and detained pending trial.  ECF No. 6.  On June 28, 2021, Padgett was indicted on the same charges.  ECF No. 15.  On September 24, 2021, Padgett filed the instant motion.  ECF No. 22.

## III.   *FRANKS* HEARING

Padgett first argues that the Court should order a *Franks* hearing because Detective Severe made false statements and/or intentional or reckless omissions of material fact in a certification in support of a search warrant.  ECF No. 22 at 8–10.  In particular, Padgett points to the following statements in Detective Severe's certification as material misrepresentations:

1. That Det. Thompson asked Padgett to speak with him, and that Padgett voluntarily accepted the invitation to willingly remain with him and subsequently leave the scene with law enforcement;

2. That law enforcement could see through the subject vehicle and could observe a rolled marijuana cigarette in plain view in the ash tray of the subject vehicle;

3. That law enforcement could not have perceived an odor of marijuana while standing outside the subject vehicle; and

4. That, while detectives were looking into the vehicle, Padgett allegedly yelled that there was "only some marijuana inside of the subject vehicle."

*Id.* at 9–10.  In opposition, the Government argues that a *Franks* hearing is improper because Padgett failed to make a substantial showing: (1) that Detective Severe misrepresented or omitted facts intentionally or recklessly, or (2) that the supposed misrepresentations or omissions were material to a finding of probable cause.  ECF No. 25 at 6.

This Court finds that: (1) Padgett has not shown that Detective Severe intentionally or recklessly misrepresented or omitted facts in his certification; and (2) Padgett has not shown that the alleged misrepresentations or omissions were material to probable cause.  Accordingly, Padgett's motion requesting a *Franks* hearing is denied.

1. Legal Standard

The Fourth Amendment prohibits the intentional or reckless inclusion of a materially false statement (or omission of material information) in a search-warrant affidavit. In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that a defendant may be entitled to challenge the truthfulness of facts alleged in support of a search-warrant application. The right to a Franks hearing, however, is not absolute. As the Supreme Court stated in *Franks*, there is a "presumption of validity with respect to the affidavit supporting [a] search warrant." *Id*. at 171. To obtain a *Franks* hearing, the movant must make a "substantial preliminary showing that (1) a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and that (2) "the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 154-56; *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006).  To meet this threshold, the defendant must present more than conclusory statements that the affidavit contains false statements or omissions. *Franks*, 438 U.S. at 171; *Yusuf*, 461 F.3d at 383 n.8.

5

Under the first prong, the criminal defendant must specifically identify allegedly false statements or omissions in the affidavit and provide a statement of reasons supporting the argument. *Franks*, 438 U.S. at 171.  The defendant must also provide an offer of proof or give a satisfactory explanation for the absence of proof.  *Id.*

Even if a defendant can make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit in satisfaction of the first prong, the defendant still must show under the second prong that the offending information was "necessary to the finding of probable cause." *Franks*, 438 U.S. at 154-56.  Under the second prong, the defendant must prove by a preponderance of the evidence that once the allegedly false statement is excised, the remaining allegations set forth in the affidavit do not establish probable cause.  *United States v. Gordon*, 664 F. App'x. 242, 245 (3d Cir. 2016).

> 2. <u>Padgett has not shown that the warrant certification contained intentionally or recklessly misleading statements or omissions</u>

The Court finds that Padgett has not sufficiently alleged that law enforcement made intentionally or recklessly misleading statements or omissions in its warrant certification.  To make the substantial preliminary showing, Padgett cannot rest on conclusory allegations or a "mere desire to cross-examine," but rather must specifically identify the alleged false statements or omissions in the affidavit and present an offer of proof contradicting the affidavit. *Franks*, 438 U.S. at 171; *see also Yusuf*, 461 F.3d at 383 n.8.  Moreover, he must challenge the affiant's state of mind in addition to the truth of the certification. *United States v. Brown*, 631 F.3d 638, 649 (3d Cir. 2011) (holding challenge to truth of affidavit insufficient for a Franks hearing where defendant offered no evidence that affiant knowingly or recklessly gave false statements).  Here, while

Padgett enumerates several alleged misstatements in Detective Severe's warrant certification (ECF No. 22 at 9–10), he largely fails to allege, let alone make a "substantial showing," that Detective Severe possessed the culpable state of mind in drafting the certification. Padgett has not set forth facts sufficiently demonstrating that Detective Severe, in drafting the warrant certification, intentionally and knowingly, or with reckless disregard for the truth, misstated facts or omitted key information. Additionally, Padgett has not presented an "offer of proof contradicting the affidavit" as required to satisfy this prong. Accordingly, Padgett's argument that Detective Severe intentionally and knowingly, or with reckless disregard for the truth, misrepresented and omitted material facts from the warrant certification, is without merit.

> 3. <u>Padgett has not shown that the allegedly misleading statements/omissions were material to a finding of probable cause</u>

Even if the Court found that Padgett had made a substantial showing that Detective Severe possessed the requisite mental state to render the warrant certification improper under prong one, which it does not, the Court holds that Padgett has not made a substantial showing as to the materiality of the allegedly misleading statements and omissions to a finding of probable cause. At the second stage of the *Franks* analysis, the criminal defendant must make a substantial showing that the misrepresented or omitted facts are "necessary to the finding of probable cause." *Yusuf*, 461 F.3d at 383–84. Unless the allegedly misrepresented or omitted information materially undermines the affidavit's showing of probable cause, a *Franks* hearing is not required. *United States v. Pavulak*, 700 F.3d 651, 663 (3d Cir. 2012). The Court will consider each allegedly misleading statement or omission in turn.

*First,* Padgett alleges that he never agreed to remain with Detective Thompson while other law enforcement officers arrived at the scene, nor that he left the scene voluntarily with detectives.

ECF No. 22 at 9–10. In particular, Padgett argues it "belies common sense that Defendant, a target of a homicide investigation, would have somehow voluntarily stayed to speak with homicide detectives." ECF No. 26 at 3. Notwithstanding this assertion, it is not relevant to the materiality of the alleged misstatements. As the Government points out, regardless of Padgett's voluntary presence or alleged cooperation, probable cause existed to search the subject vehicle because, among other things, contraband was in plain view. ECF No. 25 at 7. Further, alternative justification existed for the warrant, including the K-9 sniff. *Id.* at 8. Thus, Padgett has not shown how these alleged misstatements – that Padgett remained with Detective Thompson voluntarily and left the scene voluntarily– were "necessary to the finding of probable cause."

*Second*, Padgett argues that the Government omitted the allegedly material facts that the subject vehicle's windows were tinted, and detectives used flashlights to look through the windows, even though it was daytime. ECF No. 22 at 9–10. According to Padgett, these facts are material because they are central to the application of the "plain view" search executed by the detectives on the scene. ECF No. 26 at 2. However, at most, Padgett's allegations show that detectives saw into the subject vehicle using flashlights, not that the detectives required the flashlights to plainly observe the contraband. Padgett supplies photos of the subject vehicle and contraband in question (ECF No. 22 at Ex. H) but has not put forth any proof, let alone made a substantial showing, contradicting law enforcement's allegation that a rolled marijuana cigarette was visible in plain view. Moreover, Padgett has not shown that omitting these facts was "essential to the finding of probable cause" in procuring a warrant to search the subject vehicle. Thus, Padgett's claims that these alleged omissions were material to a finding of probable cause fails.

*Third,* Padgett claims that "officers could not smell marijuana through the closed windows and doors of the subject vehicle." ECF No. 22 at 9. In support of this argument, Padgett includes

a report by expert witness Dr. Richard L. Doty, who concluded that the marijuana inside of the vehicle could not have emitted an odor detectable outside of the subject vehicle. *Id.;* ECF No. 26 at 2–3. Even if true, Padgett has not established the materiality of this misstatement. Additionally, neither Padgett nor his expert addressed the perceptibility of odor in the air around the subject vehicle to the extent that one or more doors were opened to allow for its occupant(s) to exit. ECF No. 25 at 8–9. Moreover, as the government points out, the alleged odor emanating from the subject vehicle was only one of several indicators leading to probable cause. In other words, this alleged misstatement about marijuana odor emanating from the subject vehicle cannot be material both because the detective on the scene visibly observed marijuana inside of the vehicle, and because Padgett purportedly informed the detectives that there was marijuana inside of the vehicle. Even absent the odor, the government has adequately shown probable cause existed to search the subject vehicle. Thus, Padgett has not established the materiality of the alleged misstatement.

*Fourth*, and lastly, Padgett denies that he told officers that there was "some marijuana inside of the subject vehicle." ECF No. 22 at 10. However, as noted above, this alleged statement by Padgett was only one of several bases for probable cause. Thus, even assuming the detective's certification misstates the truth of this alleged assertion, Padgett has not shown the materiality of the misstatement. Under the totality of circumstances, Padgett has not shown that probable cause would necessarily be lacking absent this alleged misstatement. This Court holds that Padgett has failed to establish the materiality of the alleged misstatement. Because probable cause was alternatively established through visual and olfactory observation of the marijuana in plain view, Padgett's claim fails.

Accordingly, as Padgett has failed to make the requisite "substantial preliminary showing" under either prong of the *Franks* analysis, the Court denies Padgett's motion for a *Franks* hearing.

### IV.     MOTION TO SUPPRESS

Padgett argues that the Court should suppress evidence seized from the subject vehicle (including a handgun, narcotics, and the subject cell phone) on grounds that: (1) the subject vehicle was unlawfully seized; (2) the search warrant application was based upon false and misleading statements; (3) the search warrant application for the subject cell phone was improperly tainted by the earlier, defective warrant application; and (4) based on the above, the government cannot introduce evidence unlawfully seized by state authorities.  ECF No. 22 at 10–12.  Padgett also argues that the Court should suppress any statement he made to law enforcement on September 9, 2020.  In particular, Padgett points to the fact that he was in custody to warrant suppression of any pre-Miranda statement he allegedly made to law enforcement.  *Id.* at 13.

In opposition, the Government argues that the seizure and subsequent search warrant application of the subject vehicle and subject cell phone were validly based on ample probable cause, and that Padgett has not shown that the warrant certification contained material misstatements or omissions.  ECF No. 25 at 10.  Additionally, the Government argues that Padgett's statement to law enforcement should not be suppressed because Padgett allegedly offered the statement freely and voluntarily.  *Id.* at 11.

The Court finds that: (1) detectives lawfully seized the subject vehicle and validly obtained search warrants of the subject vehicle and subject cell phone; and (2) Padgett's statement to law enforcement regarding the presence of marijuana inside the subject vehicle was voluntary and willful, and thus will not be suppressed.  The Court explains these findings in detail below.

1. Legal Standard

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures." U.S. Const. amend. IV. To prevail on a motion to suppress, a defendant generally bears the burden of proving the challenged search or seizure was unreasonable under the Fourth Amendment. *See United States v. Acosta*, 965 F.2d 1248, 1257 n.5 (3d Cir. 1992) ("The proponent of a motion to suppress has the burden of establishing that his Fourth Amendment rights were violated."). However, once the defendant has established a basis for his motion, *i.e.*, that the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995). The Government must demonstrate by a preponderance of the evidence that the challenged evidence is admissible. *See United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974).

2. The Court Will Not Suppress Evidence Obtained from a Lawful Search and Seizure of the Subject Vehicle and Subject Cell Phone

The Court finds that, under the totality of the circumstances, Padgett has not met his burden of establishing that the Government violated his Fourth Amendment rights. Padgett alleges that there was no probable cause to seize the vehicle nor any exception to the warrant requirements. ECF No. 22 at 10. Padgett references "the authorities set forth in *Brown v. State*, 230 N.J. 84 (2017)" as a basis for arguing law enforcement had no authority to seize the vehicle. ECF No. 22 at 10–11. However, Padgett does not include any specific authority or legal rule that would render this seizure unlawful. Padgett alleges in conclusory fashion that the Government lacked probable cause to seize the subject vehicle and its contents, but Padgett falls short of meeting his burden of proving that the challenged seizure was unreasonable under the Fourth Amendment. *See Acosta*, 965 F.2d at 1257 n.5 ("The proponent of a motion to suppress has the burden of establishing that his Fourth Amendment rights were violated."). Padgett merely reiterates the same arguments made in support of his motion for a *Franks* hearing – that the search warrant application was based upon

false and misleading statements/omissions. ECF No. 22 at 10–11.  However, as explained above,[2] this Court finds that law enforcement did not make materially false or misleading statements/omissions with the requisite culpable mental state in procuring a valid search warrant. It follows that, because the Government lawfully seized the subject vehicle and subject cell phone, and because the search warrant applications were not based upon false or misleading material statements/omissions, the government may introduce evidence obtained from the search and seizure of the subject vehicle and subject cell phone.  Thus, Padgett's motion to suppress evidence obtained from the search and seizure of the subject vehicle and subject cell phone is denied.

3. The Court Will Not Suppress Evidence Obtained from Statements Made by Padgett

The Court similarly will not suppress evidence obtained through statements made by Padgett to law enforcement on September 9, 2020.  "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Miranda v. Arizona*, 384 U.S. 436, 478 (1966*); see also United States v. Fautz*, 812 F. Supp. 2d 570, 645-46 (D.N.J. 2011) (defendant's spontaneous admissions are admissible despite lack of Miranda warning); *cf. United States v. Young*, 233 F. App'x 114, 115 (3d Cir. 2007) (incriminating statement given "spontaneously and voluntarily" after invocation of suspect's Fifth Amendment right to remain silent is admissible under Miranda). Here, the facts indicate that Padgett offered the statements in question voluntarily, not in response to any questions by law enforcement.  ECF No. 25 at 11.  Thus, regardless of whether Padgett was in interrogative custody, the fact that he "spontaneously and voluntarily" offered the information

---

[2] *See supra* Section III.

precludes suppression of the evidence. Accordingly, the Court denies Padgett's motion to suppress evidence.

## V.     ADDITIONAL RELIEF

Padgett also made several requests for production, such as requests that the Court order the Government to: (1) produce additional discovery as requested by Padgett – namely, grand jury testimony, information relating to any cooperating individuals, and any information favorable to the defense from the personnel files of all law enforcement officers expected to testify in accordance with *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991); (2) provide a Bill of Particulars as to Count Three of the Indictment; (3) immediately disclose any materials under *Brady* and *Giglio*; (4) disclose any other crimes, acts or wrongs it intends to introduce at Padgett's trial in accordance with Federal Rule of Evidence 404(b); (5) produce material under the Jencks Act (18 U.S.C. § 3500) at least thirty days prior to witness' testimony; and (6) permit Padgett to file additional motions (or to supplement these motions) as they become appropriate. ECF No. 22 at 1–2.

First, this Court denies Padgett's request that the Government produce grand jury testimony. Padgett argues, without support or elaboration, that "[i]t is likely that the grand jury transcripts will reveal information relevant to Mr. Padgett's defense including at a suppression hearing." ECF No. 22 at 16. Federal Rule of Civil Procedure 6(e)(3)(E)(ii) states that a court may authorize pretrial disclosure of grand-jury materials "at the request of a defendant *who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury*." (emphasis added). *See also United States v. Budzanoski*, 462 F.2d 443, (3d Cir. 1972) ("[T]here may be pre-trial discovery of the testimony of a witness *when it relates to the dismissal of the indictment*." (emphasis added)). Further, Grand Jury proceedings are presumptively entitled

13

to secrecy, and to obtain disclosure of grand jury materials "a party must show a particularized need for that information which outweighs the public interest in secrecy." *United States v. McDowell*, 888 F.2d 285, 298 (3d Cir. 1989). Here, Padgett has offered no basis on which the Court could conclude that anything occurred before the grand jury that might lead to dismissal of the Indictment, nor any justification, let alone a particularized need, for the contents of the Grand Jury testimony. Accordingly, the Court denies Padgett's motion for pretrial disclosure of grand-jury transcripts.

Next, this Court denies Padgett's motion for a bill of particulars. Padgett argues that the indictment was "too imprecise to permit Defendant to understand the nature of the drug trafficking" alleged. ECF No. 22 at 20. A bill of particulars is required only when an indictment is too vague to permit the defendant to: (a) understand the charges and prepare a defense, (b) avoid unfair surprise, and (c) assert a claim of double jeopardy where appropriate. *United States v. Urban*, 404 F.3d 754, 771-72 (3d Cir. 2005). "Only where an indictment fails to perform these functions, and thereby 'significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial[,]' will we find that a bill of particulars should have been issued." *Id.* (citations omitted). As long as the indictment enables the defendant to understand the accusations against him and the central facts that the United States will present at trial, a bill of particulars is unwarranted. *See United States v. Rosa*, 891 F.2d 1063, 1066-67 (3d Cir. 1989). Here, Padgett has not sufficiently alleged that he requires a bill of particulars to understand the charges and prepare a defense. A review of the indictment and related documents pertaining to the arrest and charging of Padgett indicates that the Government has provided Padgett with more than enough information to permit him to understand the charges and prepare a defense. Moreover, the Third Circuit has emphasized that a bill of particulars is unnecessary where, as here, the

government supplements an indictment with substantial discovery. *Urban*, 404 F.3d at 772. *See* ECF No. 25 at 12 (outlining the discovery and notifications provided by the government to Padgett).

Accordingly, Padgett has not shown how, without this bill of particulars, his ability to prepare his case will be "significantly impaired." Thus, because this Court finds that the indictment enables Padgett to clearly and fully understand the charges against him, a bill of particulars is not warranted and Padgett's request is denied.

The majority of Padgett's remaining requests are either premature or moot. This includes requests for: (1) information relating to any cooperating individuals; (2) the personnel files of all agents expected to testify in this matter in compliance with *Henthorn*; (3) recorded statements by Padgett to law enforcement in relation to or at the time of the events at issue; (4) video or audio recording of the event at issue; (5) an inspection of the subject vehicle and the contraband seized from it; (6) identities of law enforcement officers involved in the events at issue; (7) contact information of and statements made by any prospective Government witnesses; (8) consent-to-search or *Miranda* forms; (9) *Brady* and *Giglio* materials; (10) evidence of any crimes, wrongs, or acts that the Government intends to introduce at trial under Federal Rule of Evidence 404(b); and (11) Jencks Act material. The Government acknowledges its various disclosure and preservation obligations, and further represents that it has and will abide by these various requirements as they become due. ECF No. 25 at 14–15 (noting that the Government is well aware of, and will abide by, its obligations with respect to *Brady*, *Giglio*, and the Jencks Act). Moreover, the Government contends that it has already addressed several of these demands and notified Padgett as such. ECF No. 25 at 12. Padgett does not contend that the Government has failed to abide by its various disclosure or preservation obligations. Accordingly, because these demands have been met, will

be met, or are moot, Padgett's remaining discovery motions are denied. Padgett may renew these motions to the extent he contends in the future that the Government has failed to abide by its discovery and disclosure obligations.

Lastly, Padgett seeks leave to file additional motions as they become appropriate. ECF No. 22 at 22. The Government does not oppose this request to the extent the motions are not simply an attempt by Padgett to extend the time for filing motions that could and should have been brought based on existing discovery materials. ECF No. 25 at 17–18. The Court will consider the propriety of any additional motions as they are filed, and Padgett is granted leave to file additional motions as needed.

## VI. CONCLUSION

For the aforementioned reasons, the Court hereby denies Padgett's motion to compel a *Franks* hearing, suppress evidence, and obtain pretrial relief. Padgett's motion is granted only to the extent he seeks leave to file additional pre-trial motions. An appropriate Order follows this Opinion.

**DATE**: March 9, 2023

s/ Claire C. Cecchi<br>
**CLAIRE C. CECCHI, U.S.D.J.**